UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRILL LYNISE HAMPTON,<br>　　　　　Plaintiff,<br>　　v.<br>CAROLYN W. COLVIN,<br>　　　　　Defendant. | Case No. 14-cv-04597-HSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15,19 |

On October 15, 2014, Plaintiff Sherrill Lynise Hampton filed this action seeking judicial review of Administrative Law Judge ("ALJ") Philip E. Callis' decision that she is not disabled under the Social Security Act. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 15, 19. Plaintiff argues that the ALJ committed reversible errors that warrant remand directly for the payment of benefits. Defendant Commissioner Carolyn W. Colvin contends that the ALJ made no reversible errors and that substantial evidence supported the ALJ's decision.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Cross-Motion for Summary Judgment.

I.　**BACKGROUND**

Plaintiff filed an application for disability and disability insurance benefits and for supplemental security income on June 16, 2011, alleging disability beginning May 31, 2003. Administrative Record ("AR") 11. Her claim was first denied on November 7, 2011, and then again upon reconsideration on May 2, 2012. *Id*. On May 23, 2012, Hampton filed a written request for hearing. *Id*. On February 6, 2013, the ALJ held a hearing where both Plaintiff and an impartial vocational expert testified. *Id*. On May 8, 2013, the ALJ issued a written decision

finding Plaintiff not disabled as defined by the Social Security Act, and denied her application for disability and disability insurance benefits and for supplemental security income. AR 21. The decision followed the requisite five-step process, which proceeds sequentially as each required finding is made.

At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 416.920(b), 404.1520(b). Substantial gainful activity is defined as work activity that is both substantial and gainful. A person is involved in "substantial work activity" if she engages in work that involves significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is defined as "work usually done for pay or profit," regardless of whether the claimant actually receives a profit. 20 C.F.R. § 416.972(b). If the claimant is engaged in substantial gainful activity, she is not disabled. If the claimant does not engage in substantial gainful activity, the ALJ proceeds to Step Two of the evaluation. In this case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 31, 2013, the alleged onset date, and proceeded to Step Two. AR 13.

At Step Two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. §§ 416.920(c), 404.1520(c). A "severe" impairment is defined in the regulations as one that significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe impairment or combination of impairments, she is not disabled. If the claimant does have a severe impairment or combination of impairments, the ALJ proceeds to Step Three. Here, the ALJ found that Plaintiff suffered from several severe impairments: chronic left ankle pain, bilateral knee pain, chronic lumbar pain, and neuropathy. AR 14. The ALJ addressed the evidence concerning the existence of Plaintiff's claimed mental health symptoms and—based on his consideration of the four functional areas set out in the disability regulations for evaluating mental disorders, *see* 20 C.F.R., Part 404, Subpart P, Appendix 1 (the "Paragraph B" criteria)—found only mild limitations in Plaintiff's daily living, social functioning, and concentration, persistence, or pace, with no episodes of decompensation. AR 14-15. Based on these findings, the ALJ determined that Plaintiff's medically determinable mental impairments are "nonsevere." AR 16 (citing 20 CFR §§ 404.1520a(d)(1) and

1   416.920a(d)(1)).

2   At Step Three, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. 20 C.F.R. § 416.909. If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the ALJ proceeds to the next step. At Step Three, the ALJ found that Plaintiff does not have an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1, or a combination of impairments equal to those listed, and proceeded to the next step. AR 17.

Before reaching Step Four in the sequential evaluation, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e); 416.920(e). A claimant's RFC consists of her ability to engage in physical and mental work activity on an ongoing basis, despite any physical or mental limitations from her impairments. The ALJ considers both severe and non-severe impairments in determining the claimant's RFC. 20 C.F.R. §§ 416.920(e), 416.945.

Here, the ALJ considered Plaintiff's testimony, medical records, and the opinions of four examining medical providers and two state agency medical consultants: Patricia Spivey, Psy.D; Katherine Wiebe, Ph.D; Aliyeh Kohbod, Ph.D; Susan Dawkins, LCSW; D.V. Lucila, M.D.; and Eugene Campbell, Ph.D. AR 14-16. The ALJ afforded "great weight" to the opinion of Dr. Spivey, who found only mild mental limitations, AR 15, gave "little weight" to the opinions of Dr. Wiebe, Dr. Kohbod, and Ms. Dawkins, who generally found more severe limitations, AR 16, gave "some weight" to Dr. Lucila and Dr. Campbell's evaluation, AR 15-16, and found Plaintiff's testimony about the severity of her symptoms "not entirely credible," AR 20. After considering the medical evidence in the record and the relative weights of the medical opinions, the ALJ concluded that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) and 416.967(a) except the claimant is capable of occasional pushing and pulling

> with the bilateral lower extremities; and occasional crouching, balancing, stooping, climbing, kneeling, and crawling. The claimant is not capable of operating foot controls with her left lower extremity and requires a cane for ambulation.

AR 17.

At Step Four, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 416.920(f). If the claimant has such capacity, she is not disabled. If the claimant is unable to do past relevant work or has no past relevant work, the ALJ proceeds to the final step in the sequential evaluation. In this case, the ALJ determined that Plaintiff could return to her previous occupation as a receptionist and a secretary. AR 20. The ALJ relied on the testimony of a vocational expert, who stated that an individual with Plaintiff's RFC "could perform the claimant's past relevant work as a receptionist and secretary" and thus did not proceed to Step Five. AR 21. Based on this conclusion, the ALJ determined that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act, and thus not entitled to the benefits for which she applied. *Id*.

## II.   STANDARD OF REVIEW

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. *Stout v. Comm'r Social Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The Court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006); *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)). Even where the evidence is not susceptible to any rational interpretation supporting the ALJ's decision, the Court may not reverse if the ALJ's error is harmless. *See Molina v. Astrue*, 674 F.3d

1104, 1111 (9th Cir. 2012).

**III.    DISCUSSION**

Plaintiff argues that the ALJ improperly denied her petition for benefits on the grounds that the ALJ: (1) failed to consider whether Plaintiff's depression, anxiety, and antisocial personality disorder are severe impairments; (2) did not follow proper procedure when evaluating the severity of Plaintiff's mental limitations; (3) improperly weighed relevant examining source opinions; (4) failed to provide sufficient reasons for rejecting Plaintiff's testimony; and (5) did not include any mental limitations in the hypothetical submitted to the vocational expert.

**A.    Plaintiff's Depression, Anxiety, and Antisocial Personality Disorder**

Plaintiff contends that at Step 2 the ALJ failed to articulate whether Plaintiff's depression and anxiety are severe impairments and erred in finding that the antisocial personality disorder is not severe. Dkt. No. 15 at 8-10. The Court finds that any errors are harmless.

To begin with, Plaintiff prevailed at Step 2. The ALJ found that Plaintiff had severe impairments, allowing Plaintiff to proceed to Step 3. *See Burch*, 400 F.3d at 682 (concluding any error ALJ committed at Step Two was harmless because the step was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Moreover, even assuming that the ALJ erred in failing to mention depression and anxiety or erred in finding that the personality disorder caused only minimal limitations, these errors were harmless because the ALJ still considered the impairments in his analysis. The ALJ expressly discussed the opinions of Drs. Wiebe and Kohbod, both of whom recognized these impairments, and, as explained *infra*, provided specific and legitimate reasons for discounting their opinions. Moreover, the ALJ explained that he "considered *all* symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," specifically acknowledging Plaintiff's allegations of depression and anxiety, AR 17-18. Similarly, the ALJ found that the "treatment records generally revealed the claimant was cooperative and her mood appropriate." AR 15. In light of the "little weight" given to these examining source opinions, that the ALJ expressly recognized Plaintiff's allegations of depression and anxiety, and that the Plaintiff ultimately prevailed at Step 2, the Court finds any failure on the

5

1   ALJ's part harmless.  *See Stout*, 454 F.3d 1050, 1055 (finding errors harmless where they are

2   "inconsequential to the ultimate nondisability determination").

### B. The Legal Standard to Determine Severity of Mental Limitations

Plaintiff contends that the ALJ applied the wrong standard of law in determining that her mental impairments were not severe.  Dkt. No. 15. at 11.  Specifically, Plaintiff claims that "the ALJ's application of part B criteria of the listings to the severe impairment analysis is legal error."  *Id*.  In response, Defendant argues that the ALJ applied the correct standard of law for evaluation of mental impairments.  Dkt. No. 19 at 8.

The Court agrees with Defendant that the ALJ applied the appropriate standard.  *See Hamilton v. Colvin*, No. 12-cv-9459-SH, 2013 WL 3935369, at *2 (C.D. Cal. July 30, 2013) ("[I]t was proper for the ALJ to apply the paragraph B criteria in determining that plaintiff's mental impairment was not severe.").  A claimant's allegations of severe mental impairment are evaluated pursuant to a "special technique," whereby relevant symptoms, signs, and laboratory findings are evaluated to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R § 416.920a(b)(l).  If such impairments are shown, the ALJ evaluates the claimant's degree of functional limitation.  20 C.F.R. § 416.920 a(b)(2).  The ALJ then identifies the existence of any potentially disabling mental impairment under the "A" criteria.  If an impairment is established, the ALJ then evaluates the general severity of the impairment under the "paragraph B" criteria.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A).  Severity of a mental impairment is measured by "assess[ing] functional limitations using the four criteria in paragraph B of the listings: [a]ctivities of daily living, social functioning; concentration, persistence, or pace; and episodes of decompensation."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).

Here, the ALJ found that Plaintiff's "antisocial personality disorder . . . do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities."  AR 14.  And, as required, the ALJ evaluated the severity of the impairment using the "paragraph B" criteria.  *Id.*  Accordingly, there was no legal error.

Although a "district court need not consider arguments raised for the first time in a reply brief," *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), the Court will address the

6

Plaintiff's belated contention that, in addition to considering the Part B criteria, the ALJ was required to make an independent finding that there was "no more than a minimal limitation in [Plaintiff's] ability to do basic work activities." Dkt. No. 21 at 2 (quoting 20 C.F.R. § 404.1520a(d)(1)). This argument is a red herring, as the ALJ made such a finding. *See* AR 14 ("[O]bjective findings support the claimant's antisocial personality disorder; ongoing alcohol use; and history of cocaine abuse, currently in remission singly and in combination, do not cause more than minimal limitation in claimant's ability to perform basic mental work activities.").

### C. Evaluation of "Medical Source" and "Other Source" Opinions

When evaluating an ALJ's treatment of medical source opinions, the Court distinguishes among three types of medical opinions: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of a treating physician is "entitled to greater weight than that of an examining physician, and the opinion of an examining physician is entitled to greater weight than that of a non-examining physician," *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216.

Except in situations when an ALJ gives a treating source's opinion controlling weight, an ALJ is required to "evaluate *every* medical opinion" received when deciding the weight to give to a medical opinion. 20 C.F.R. § 404.1527(c) (emphasis added). Section 404.1527(c) identifies specific factors that the ALJ should consider, including (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability (*i.e.*, amount of evidentiary support for an opinion), (4) consistency with the record, (5) specialization (*i.e.*, more weight given to opinions within a physician's specialty), and (6) "[o]ther factors" that tend to support or contradict an opinion. 20 C.F.R. § 1527(c).

Here, Plaintiff contests the weight the ALJ gave the following examining sources: Dr. Spivey, Dr. Wiebe, Dr. Kohbod, and Clinical Social Worker Dawkins. As both parties

7

acknowledge, these examining sources offered conflicting opinions as to Plaintiff's impairments. *See* Dkt. No. 15 at 12; Dkt. No. 19 at 8. Because the medical record was inconclusive, the ALJ was required to resolve conflicts and questions of credibility by providing specific, legitimate reasons supported by substantial evidence for his decision to rely on some opinions while rejecting others. *See Morgan*, 169 F.3d at 601 (9th Cir. 1999); *Bayliss*, 427 F.3d at 1216.

### i. Dr. Spivey

Plaintiff contends that the ALJ afforded Dr. Spivey's opinion too much weight. Dkt. No. 15 at 13; *see* Exhibit 4F. Dr. Spivey evaluated Plaintiff once in September 2011; the evaluation included a "mental status exam and clinical interview." AR 602. Based on the evaluation, Dr. Spivey concluded that Plaintiff had no impairments in any work-related abilities, with the exception of suffering from "mild" impairments in her ability "to maintain emotional stability/predictability" and to "verbally communicate effectively with others." AR 602-03.

The ALJ offered four reasons to support the "great weight" he gave Dr. Spivey's opinion. First, the ALJ noted that Dr. Spivey's "assessment was based on an in-person examination and psychometric testing." AR 15. Acknowledgment of the examining relationship between a doctor and the claimant is persuasive, *see* § 404.1527 (when weighing medical opinions, more weight should be afforded "to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not."). That Drs. Wiebe and Kohbod also examined Plaintiff in person does not negate the persuasive value of Dr. Spivey's examining relationship with Plaintiff.

Second, the ALJ noted that Dr. Spivey's evaluation was "consistent with the claimant's activities of walking, using public transportation alone, shopping in stores, reading, watching movies, and socializing with friends and family." AR 15. This constitutes a specific, legitimate reason for giving the doctor's opinion great weight. The Ninth Circuit has recognized that a medical opinion's consistency with the claimant's activities of daily living is a relevant factor. *See Morgan*, 169 F.3d at 600-02 (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding ALJ's reason was adequate where he provided that claimant's restrictions were "inconsistent with the

1    level of activity that Rollins engaged in by maintaining a household and raising two young
2    children").
3         Third, the ALJ noted Dr. Spivey's familiarity with the Social Security Administration's
4    disability programs and evidentiary requirements; this is another recognized factor.  AR 15; *see* §
5    404.1527 (recognizing the "amount of understanding of our disability programs and their
6    evidentiary requirements that an acceptable medical source has").  And, fourth, the ALJ stated that
7    Dr. Spivey's opinion was consistent with the substantial medical record.  *See* AR 15 (citing
8    Exhibit 4F at 3).  For example, the ALJ cited Plaintiff's "clear and goal directed thought process,"
9    absence of "unusual or bizarre idea[s]," "fair insight and judgment," an IQ in the "average range,"
10   and a score of 27/30 on the Mini Mental State Examination.  AR 14.  These further constitute
11   specific and legitimate reasons for affording Dr. Spivey's opinion great weight.

12        **ii.    Dr. Kohbod**

13        Dr. Kohbod examined Plaintiff on three separate instances in February and March 2013.
14   AR 1010.  He also reviewed Dr. Wiebe's March 2012 psychological report, and administered the
15   following tests to form his opinion: (1) Wechsler Adult Intelligence Scale-Fourth Edition, (2)
16   Wide Range Assessment of Memory and Learning - Second Edition ("WRAML-2"), (3) Ray
17   Complex Figure, and (4) Million Clinical Multiaxial Inventory-III (x2).  AR 1010.  Dr. Kohbod
18   found that testing confirmed Plaintiff's depression and anxiety, a low IQ, and fairly pronounced
19   mental impairments.  He concluded that when this is "compounded by her inability to receive
20   guidance from authority figures, and her wide fluctuation in mood," it was difficult to see how she
21   would be able to withstand the demands of a standard work environment.  AR 1018.

22        Dr. Kohbod's opinion recounts a number of contradictions and discrepancies in Plaintiff's
23   claims, including differing ages of when she was sexually assaulted, when she learned her
24   daughter was being molested, and why she did not finish high school, as well as evidence of a
25   "tendency to magnify her illness" and "incidents of excessive complaining."  AR 1011-12, 16.
26   Her low IQ score led Dr. Kohbod to conclude that there were only two possible explanations,
27   either "she did not fully engage in the assessment or that there is some fabrication regarding her
28   scholastic history."  AR 1015.  Similarly, the low scores from the WRAML-2 testing led Dr.

Kohbod to question "how she was able to perform the more complex tasks required of an administrative assistant at her previous employment." AR 1015. Dr. Kohbod found that these discrepancies weighed in favor of a disability finding; for instance, he concluded that the Plaintiff's claims of past employment are "doubtful given her cognitive functioning, memory impairments, lack of emotional control, anxiety, and depressive symptoms." AR 1019.

On the other hand, the ALJ relied on these discrepancies as a basis for giving Dr. Kohbod's opinion "little weight." AR 16. Relying on "claimant's past employment history as an administrative assistant, which required her to perform past complex tasks" as well as "her activities of daily living, including shopping in stores for groceries, using public transportation alone, handling money, and reading," the ALJ concluded that the testing results were more likely due to Plaintiff's lack of engagement in testing and not a "fabrication of scholastic history." *Id.* Additionally, the ALJ found that Dr. Kohbod's opinion "overstate[d] the claimant's limitations," in light of her failure "to cooperate with some aspects of her assessment." AR 16; *see also* AR 20 ("[T]he record contains evidence that the claimant did not fully participate in psychometric testing, which reasonably indicates the claimant was attempting to portray limitations that are not actually present.").

An ALJ may evaluate medical opinions based on their consistency with the record. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *see* § 404.1527(c)(4) (consistency with the record as a whole is a valid factor for weighing medical opinions). Moreover, this Court must accept an ALJ's reasonable interpretation of the evidence, even if that evidence may be "susceptible to more than one rational interpretation." *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Accordingly, the Court finds that, although the ALJ's interpretation differed from that of Dr. Kohbod's opinion, his interpretation was not only reasonable but supported by substantial evidence. The ALJ chose to disregard aspects of Dr. Kohbod's opinion and to give more weight to Dr. Spivey's, and the Court finds that it was within the ALJ's discretion to do so for the specific and legitimate reasons articulated. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). Given that conflicting medical evidence is at least susceptible to the ALJ's interpretation, the Court finds that the ALJ's specific and legitimate reasons support his treatment of Dr. Kohbod's opinion. *See*

*Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

### iii. Dr. Wiebe

Dr. Wiebe evaluated Plaintiff in December 2011 and February 2012, and concluded that Plaintiff has major depression, generalized anxiety disorder, indications of paranoid personality disorder and borderline personality disorder, and that her mental illnesses are debilitating. AR 713, 724.

The ALJ afforded Dr. Wiebe's evaluation "little weight," identifying specific and legitimate reasons in support. The ALJ determined that Dr. Wiebe's evaluation overstated Plaintiff's limitations in light of claimant's past employment history as an administrative assistant, contradictions with other medical evidence (specifically, Dr. Spivey's mental status testing from six-months earlier), and the "longitudinal medical record," which indicated no more than mild limitations. AR 16. The ALJ also cited the contradictions between Dr. Wiebe's findings of significant memory and concentration impairments and Plaintiff's daily activities, such as using public transportation alone, reading, and watching movies. AR 15. These reasons are supported by substantial evidence in the medical record. For instance, Plaintiff indicated in her application for disability benefits "I do not need help in personal care, hygiene or upkeep of a home," AR 190, and that she was previously employed as an assistant administrator and office technician, where she engaged in typing, filing, office support, greeting customers, putting together boxes of office supplies, coordinating office management, and answering phones. AR 294-95. Additionally, the extended medical record does not indicate significant mental impairments. *See*, *e.g.*, AR 373 (indicating that "she really wants to work on herself to be there for her children"); AR 374 (noting that Plaintiff was "high energy"); AR 413 ("[F]unctional assessment performed; independent with the activities of daily living."); AR 425 ("Alert. Oriented X3. No acute distress. Does not appear to be anxious or in pain."); AR 433 ("Mood/affect normal.").

Given the substantial evidence in the record supporting the ALJ's determination, (even if that evidence could be susceptible to more than one rational interpretation) the Court finds that the ALJ did not err in affording Dr. Wiebe's opinion only "little weight."

11

### iv. LCSW Dawkins

Similarly, the Court concludes that the ALJ properly evaluated LSCW Dawkins' assessment. LCSW Dawkins examined Plaintiff on four separate occasions from February through March 2013. AR 1020. LCSW Dawkins concluded that Plaintiff suffered from post-traumatic stress and major depression, finding that she would be unable to "ever be gainfully employed." AR 1022.

As a clinical social worker, LCSW Dawkins is not an "[a]cceptable medical source," *see* 20 C.F.R. § 404.1513. Accordingly to disregard her opinion, the ALJ needed to provide germane reasons for doing so. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010); *see also* Social Security Ruling ("SSR") 06-3p.[1] Here, the ALJ provided similar reasons (consistency with the longitudinal medical record, overstatement of Plaintiff's limitations, and contradictions with Plaintiff's activities of daily living) for discounting LCSW Dawkins' opinion. *See* AR 16. For the reasons discussed above, the Court finds these germane reasons are supported by substantial evidence in the record. Therefore, there is no error.

### D. The ALJ's Credibility Analysis

Plaintiff argues that the ALJ erred in finding Plaintiff's statements about the intensity, persistence, and limiting effects of the symptoms "not entirely credible." The Court disagrees.

Absent affirmative evidence or an explicit finding of malingering, the ALJ may reject a Plaintiff's testimony only with clear and convincing reasons supported by substantial evidence. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (absent explicit finding of malingering, clear and convincing standard applies). The ALJ is the sole judge of the claimant's credibility. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ relies on "ordinary techniques of credibility evaluation," such as (1) inconsistencies either in the testimony or between the testimony and the claimant's conduct, (2) variations between the claimant's daily activities and his symptoms, and (3) the medical record including observations of the claimant's

---

[1] "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-3p.

12

symptoms. *Molina*, 674 F.3d at 1112 (citation and internal quotation marks omitted); *see Thomas*, 278 F.3d at 958-59; SSR 96-7p.

Here, the ALJ followed SSR 96-7p's two-step process for evaluating symptoms. First, he noted that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 20; *see Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Then, he concluded Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." AR 20; *see* SSR 96-7p. Because there was no affirmative finding of malingering, the Court applies the "clear and convincing reasons" standard.

The Court finds that the ALJ articulated clear and convincing reasons supported by substantial evidence to conclude that Plaintiff's testimony was not entirely credible. The ALJ found that Plaintiff's failure to fully participate in psychometric testing indicated "that claimant was attempting to portray limitations that are not actually present." AR 20; *see also* AR 15. He concluded that such lack of cooperation, her "past employment history as an administrative assistant," and the "longitudinal medical record" indicated inconsistencies that weighed against a positive credibility finding. AR 15, 20; *see*, *e.g.*, AR 15 ("Despite the claimant's reported problems with sleep, the vast majority of treatment records do not indicate observable fatigue."); *id.* ("Furthermore, the claimant uses public transportation alone, reads, and watches movies (Exhibit 13E), which indicates she is capable of concentrating and completing tasks."). The Ninth Circuit has recognized such factors as sufficient reasons supporting an ALJ's decision to find a claimant's testimony less credible. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." (citing *Smolen*, 80 F.3d at 1284)).

The Court does not find Plaintiff's arguments to the contrary persuasive. Plaintiff contends that "[t]he ALJ cherry picks Ms. Hampton's statements . . . and repeatedly asserts broad generalizations about Ms. Hampton's daily activities and abilities." Dkt. No. 15 at 18. That a

13

claimant's "activities suggest some difficulty functioning" does not mean there are no grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *See Molina*, 674 F.3d at 1112-13.  The Court agrees with Plaintiff that she does not need to be "utterly incapacitated to be eligible for benefits." *See id.* at 19.  Indeed, the ALJ here specifically acknowledged that Plaintiff was not "at all times symptom free." AR 20. Nonetheless, he concluded, despite the presence of some symptoms, that Plaintiff's daily activities were "not as limited as one would expect considering the complaints of disabling symptoms." AR 20.  Such a finding is supported by substantial evidence in the record.  For example, although Plaintiff reported that she needed phone call reminders to remember what she needs to do, *see* AR 304, the ALJ found that Dr. Spivey's testing confirmed an ability to maintain attention and concentration and clear and goal directed thought processes, AR 602.  It is not for this Court to second-guess the ALJ's evaluation of such conflicting evidence. *See Morgan*, 169 F.3d at 600 (noting that ALJ may properly rely on conflicts between claimant's testimony of subjective complaints and objective medical evidence in the record).  For the same reason, it was reasonable for the ALJ to rely on the inconsistencies in Plaintiff's self-reported medical history, as highlighted in Dr. Kohbod's evaluation, when evaluating Plaintiff's credibility, *see* AR 1010-19. Furthermore, contrary to Plaintiff's contention, the ALJ specifically addressed Plaintiff's allegations regarding her ability to concentrate, her depression, sleeping problems, anxiety, mood swings, and discomfort.  *See*, *e.g.*, AR 15 (noting that psychometric testing and her daily activities contradicted Drs. Wiebe and Kohbod and LCSW Dawkins' impairments in concentration); *see also Thomas*, 278 F.3d at 958-59 (ALJ properly discounts credibility based on ability to perform basic household chores); *Molina*, 674 F.3d at 1113.

      Finally, Plaintiff contests the ALJ's reliance on Plaintiff's demeanor, finding it "generally unpersuasive." AR 20.  This argument lacks merit.  SSR 96-7p allows the ALJ to "consider any personal observations in the overall evaluation of the credibility of the individual statements." Consistent with the regulation, the ALJ "emphasized that this observation [referring to Plaintiff's demeanor] is only one among many being relied on in assessing credibility and is not

1   determinative."[2]  AR 20.

2   Because the ALJ provided clear and convincing reasons for discounting Plaintiff's

3   credibility, there is no error in the ALJ's credibility determination.

### E. The ALJ's RFC Determination

Plaintiff contends that the ALJ failed to incorporate all of the limitations supported by the evidence in deciding that Plaintiff could return to her past relevant work as a receptionist or secretary.  Dkt. No. 15 at 24.  The Court rejects this argument.

An ALJ posing a hypothetical question to a vocational expert "must include all of the claimant's functional limitations, both physical and mental supported by the record."  *Thomas,* 278 F.3d at 956 (citation and internal quotation marks omitted).  But, a proper hypothetical need only include those restrictions that were supported by substantial evidence in the record.  *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).  The ALJ does not have to accept every limitation Plaintiff identified; the "hypothetical question is objectionable only if the assumed facts could not be supported by the record."  *Id.* (citation and internal quotation marks omitted).  Here, there was no error as the ALJ's hypothetical paralleled the RFC determination and included those limitations that were supported by substantial evidence.  Accordingly, the ALJ properly discounted the opinions relating to her mental limitations, and his question posed to the Vocational Expert was not erroneous.

\\
\\
\\
\\
\\
\\
\\

---

[2] Additionally, assuming the ALJ erred in referencing Plaintiff's inability to lose weight, *see* AR 20, the Court finds that any error was "inconsequential" to the overall nondisability determination given the substantial weight of the record evidence and the ALJ's interpretation of such evidence. *See generally Orn*, 495 F.3d at 636-37.

IV. **CONCLUSION**

Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment, and **GRANTS** Defendant's summary judgment motion.  The clerk is directed to enter judgment in favor of Defendant and close the file.

**IT IS SO ORDERED.**

Dated: 3/17/2016

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge